CLIFFORD BERUTTI, Plaintiff-Appellee, v. DIERKS FOODS, INC., Defendant-Appellant.

Second District   No. 2—85—0442

Opinion filed July 30, 1986.

S. Richard Pincus, William Henry Barrett, and Martin K. Dennis, all of Fox & Grove, Chartered, of Chicago, and Michael T. McGreevy and Lawrence R. Kream, both of Clark, McGreevy & Johnson, of Rockford, for appellant.

Marsha J. Caporaso, of Sleepy Hollow, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Clifford Berutti filed an action for damages for breach of an employment contract when he was terminated by Dierks Foods, Inc. He was granted summary judgment in the amount of $15,800. Dierks Foods timely appeals from the summary judgment.

Dierks Foods sells grocery products to retail outlets. Berutti, who was employed by a competitor, was contacted in February 1983 by Stanley Weinstein, a personnel recruiter for Dierks Foods. Weinstein forwarded Berutti's resume to Ronald Dierks, president of Dierks Foods, Inc., who thereafter dealt with Berutti. There followed several interviews concerning sales volume and compensation. Dierks told Berutti that he would want an increase in sales in his assigned area which should generate a million dollars in sales volume.

Dierks regularly used a straight commission basis to compensate street salesmen. Berutti, who did not know how many of his former

customers would come over with him, refused to be compensated on a commission basis. Therefore, Dierks agreed to start Berutti with a compensation package which included a base weekly salary of $750, a monthly auto expense reimbursement of $250, and company health benefits.

Berutti wanted a written confirmation of how Dierks was going to compensate him. Weinstein sent Berutti a letter dated April 21, 1983, which, in pertinent part, stated:

"Per your agreement with Mr. Ron Dierks, you will be joining the Company on 9, May, 1983. The following terms and conditions have also been agreed upon:

A. Guaranteed salary for twelve months of $750.00 per week. ($39K per annum).

B. Guaranteed auto allowance of $250.00 per month.

C. Usual and customary Company medical benefit program."

A copy was sent to Dierks.

Berutti contends this was an agreement to compensate him at the weekly rate of $750, for a period of a year, and to thereafter pay him on a commission basis. Dierks agues that the $750 was only a base salary, and that the letter did not include all the terms to which the parties had agreed. Neither party sought to modify the written agreement.

Berutti's sales volume decreased from $65,457 in May, to $40,867 in September. In September, Dierks told Berutti that he was dissatisfied with Berutti's sales performance and that if his sales "didn't increase, he would have to take some action." Berutti expressed his own dismay about his sales performance and stated that he would endeavor to increase his sales. Berutti's October sales decreased to $37,318. Dierks then terminated Berutti on the basis of his inadequate sales performance.

Judge Layng granted summary judgment for Berutti ruling that he had "a guaranteed no-cut contract." He concluded that the April 21, 1983, Weinstein letter was for "12 months whether his performance was good, bad, indifferent," and there were no circumstances, "unless he was a criminal [or] something of that nature," under which Berutti could be terminated. He assessed damages at $15,800—the contract amount less monies received from unemployment-compensation disbursements. Dierks timely appealed.

On appeal from an order granting summary judgment, a reviewing court must consider all grounds and facts urged below to determine if genuine issues of material fact exist and whether the moving party was entitled to summary judgment as a matter of law. (*Talos v.*

*Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 108; *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741.) Defendant contends that the following issues of material fact are disputed: (1) the parties disagree as to the terms of the oral employment contract; and (2) the intent of the parties in using the terms in the written agreement.

Plaintiff contends that there is no genuine issue as to any material fact. Defendant points to the deposition of Mr. Dierks wherein he admits that he: (1) discussed the terms of employment that he had proposed to Mr. Berutti with the employment agent; (2) received the letter which was sent from the agent to Berutti; (3) read the contents of the letter; (4) testified that the representations made in the letter were not inaccurate; and (5) made no attempt to alter any terms of the agreement after receiving the copy.

Where terms of a contract are clear and unambiguous, they will be given their natural and ordinary meanings. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167.) A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions, and it is not ambiguous if a court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. (*Whiting Stoker Co. v. Chicago Stoker Corp.* (1948), 171 F.2d 248, *cert. denied* (1949), 337 U.S. 915, 93 L. Ed. 1725, 69 S. Ct. 1155.) Also, where it is not ambiguous, the intent of the parties must be determined from the language of their agreement alone (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362), and contract language is not rendered ambiguous simply because the parties do not agree upon its meaning (*Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 839). Further, the Illinois rule is well stated in that contract language which is ambiguous or uncertain should be resolved against the party which created it. *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377; see also *Dr. Charles W. Smith, III, Ltd. v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725.

In the instant case, the agreement is not ambiguous. Construing the evidence strictly against the moving party and liberally in favor of the opponent (*Talos v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 108), we find that no genuine issue of material fact exists; all that is necessary is to determine if the lower court properly determined the legal relationship of the parties and the consequences of their actions.

The law in Illinois is well settled that a hiring at a monthly, or

even an annual salary, if no period of duration is specified, is at will. (*Mann v. Ben Tire Distributors, Ltd.* (1980), 89 Ill. App. 3d 695, 697; *Atwood v. Curtiss Candy Co.* (1959), 22 Ill. App. 2d 369.) Berutti's employment confirmation stated that one term of his agreement with Dierks was: "A. Guaranteed salary for twelve months of $750 per week. ($39 K per annum)." Defendant contends that this language does not constitute a "term of duration," but merely reflects the rate of compensation. Defendant relies on *Kepper v. School Directors of District No. 120* (1975), 26 Ill. App. 3d 372, where the court stated that "a contract specifying no duration of employment, thereby being terminable at will, is not made otherwise by the inclusion of salary rates based on units such as months or years." (26 Ill. App. 3d 372, 374; see also *Payne v. AHFI/Netherlands, B.V.* (N.D. Ill. 1980), 522 F. Supp. 18, 22 (letter's reference to an annual rate of pay does not alter the conclusion that plaintiff's employment was at will); *Medina v. Spotnail, Inc.* (N.D. Ill. 1984), 591 F. Supp. 190, 197 ("Payment of salary calculated on an annual basis is not enough to create an employment contract for a specific duration").) Plaintiff contends that *Grauer v. Valve & Primer Corp.* (1977), 47 Ill. App. 3d 152, and *Miller v. Community Discount Centers, Inc.* (1967), 83 Ill. App. 2d 439, support affirming the trial judge's decision.

In *Kepper,* the discharged employee, a school custodian, appealed the dismissal of his complaint against the school board. The trial court determined, and the appellate court agreed, that the collective-bargaining agreement on which the employee relied did not constitute a contract of employment involving the employee individually. While the "Working Agreement" specified the amount of compensation and other items which were applicable for a period from July 1, 1970, to July 1, 1971, the court determined that the agreement merely specified certain terms and conditions relating to all custodians during the particular time indicated. (*Kepper v. School Directors of District No. 120* (1975), 26 Ill. App. 3d 372, 374.) It had no provision as to termination of employment and more importantly, did not establish the duration of plaintiff's employment in any manner.

In *Miller v. Community Discount Centers, Inc.* (1967), 83 Ill. App. 2d 439, the appellate court affirmed the trial court's judgment against the employer. The plaintiff came from Toledo, Ohio, to Chicago, Illinois, in response to a classified ad which had been placed by the defendant. The plaintiff was offered a position as a management trainee at a specified annual salary. In confirmation of his appointment, he received a letter which stated, in pertinent part: "[L]et me again extend an official welcome to the Community family; we are

certain you have a rewarding and *satisfying career* ahead of you. \*\*\*
Your beginning salary will be $10,000.00 per year as a Store Management Trainee. Regarding moving expenses, we will pay one-half now and the balance after one year." (Emphasis in original.) (83 Ill. App. 2d 439, 441-42.) The appellate court found that the phrase "satisfying career ahead of you" was sufficient to determine that the parties' employment relationship was not terminable at will, and that the language *"after one year"* made it clear that a definite term of one year was contemplated by the parties. (Emphasis in original.) (83 Ill. App. 2d 439, 443.) The court further reflected that it would be inconceivable that a man of plaintiff's age would leave his home and come such a distance for the mere possibility that he would have a permanent position. 83 Ill. App. 2d 439, 443.

In *Grauer v. Valve & Primer Corp.* (1977), 47 Ill. App. 3d 152, the employee won a judgment for the corporation's wrongful breach of his employment agreement. The appellate court affirmed, pointing to the language in the employment agreement which stated: "Attached guarantees you of a minimum of $22,500 in 1973—more likely $24,000 plus—because I look for $3,500,000 sales (*ie.* [*sic*] Shipments). I review it annually based on performance." (47 Ill. App. 3d 152, 154.) The court noted that "[the agreement] 'guarantees' Grauer 'a minimum of $22,500 in 1973,' a sum which, in view of the Corporation's projected and actual business volume could only accumulate if Grauer were allowed to remain in employment for a full year." (47 Ill. App. 3d 152, 155.) The court went on to note that "[t]he memo also stated that the contract would be reviewed 'annually,' again raising a strong inference that a contract of a year's duration was intended." 47 Ill. App. 3d 152, 155.

■ In the instant case, there are clear words of guarantee. (See *Mann v. Ben Tire Distributors, Ltd.* (1980), 89 Ill. App. 3d 695, 698 (where the court determined that the parties' relationship was terminable at will. The court distinguished its case with *Grauer v. Valve & Primer Corp.* (1977), 47 Ill. App. 3d 152, noting that no language of guarantee was present in its case.) While the term "$750 per week" reflects the rate of pay at which Dierks would compensate Berutti, the additional language of "[g]uaranteed salary for twelve months" goes beyond the rate of compensation and connotes a guaranteed salary for a specified duration. Nothing in the contract militates against an interpretation that the term of employment was "guaranteed for 12 months." The relationship of the parties is therefore properly found to be a fixed term and not at will.

■ Defendant then contends that even if a fixed-term contract

did exist between the parties, he did not breach that contract, because plaintiff was discharged for cause in that he did not increase his sales in his assigned area. He argues that an employer retains the right to discharge any employee for cause, regardless of the duration of the contract. Defendant's sole authority for this proposition is *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285. In *H. Vincent Allen & Associates, Inc.*, the contract of employment contained no specific term or termination date other than a mutual 90-day termination clause. The court determined that the legal relationship between the parties was at will, with the contract being subject to termination by either party upon the giving of 90 days' notice. (63 Ill. App. 3d 285, 294.) The court went on to state, however, that this fact did not "eliminate the basic principle of law regarding employment contracts which gives the employer the right to discharge for good cause even though such right is not stated in the agreement and even though the agreement may delineate certain specific causes for discharge." 63 Ill. App. 3d 285, 294-95.

The facts in *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, are distinguishable. In that case, the defendant-employee was found to have breached his fiduciary duty as an officer of the plaintiff-corporation by actively soliciting plaintiff's business prior to his departure from plaintiff's employment. The court found that this duty, while not an express term of the employment contract, was imposed by law. (63 Ill. App. 3d 285, 291.) In the instant case, plaintiff was not an officer of defendant's corporation. Nor did he breach any fiduciary duty imposed by law. The terms of the parties' employment agreement were contained in the correspondence dated April 21, 1983. While defendant could have included a term which would have set forth plaintiff's performance requirements, he did not do so.

We find that the level of performance here was not within the contract terms nor was it the basis for discharge for a cause which the law would impose. The judgment of the trial court is affirmed.

Affirmed.

NASH, P.J., and LINDBERG, J., concur.